## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| JACK "JAY" PALMER, JR., on behalf of the United States of America | : : : | |
| Plaintiff, | : : | Civil Action No. 4:17-CV-00072-ALM |
| | : | FILED UNDER SEAL |
| vs. | : : | JURY TRIAL DEMANDED |
| | : | |
| TATA CONSULTANCY SERVICES, LTD., | : : : | |
| Defendant. | : : | |

## QUI TAM-FALSE CLAIM ACT FIRST AMENDED COMPLAINT

The United States of America (the "United States"), the Plaintiff States (defined below), by and through *qui tam* Relator, Jack "Jay" Palmer Jr., ("Relator"), bring this action under the Federal False Claims Act, 31 U.S.C. § 3729 *et seq*. (The "False Claims Act" or "FCA"), of the respective Plaintiff States against Tata Consulting Services, Ltd., (Defendant) for fraudulently filing applications for (H-1B, L-1A Business Visas and B-1 travel visas) to recover all damages, penalties, and other remedies provided by the FCA, analogous state statutes and for his First Amended Complaint alleges:

1

## PARTIES

1.      Relator was hired to conduct an audit of Tata Consultancy Services for the Comcast Corporation's immigration practices by the Vice President and Deputy General Counsel for Employment Litigation David Brier in 2016. As such Mr. Palmer, has been privy to, seen and learned of, intimate details of Tata schemes to use the H1B, B-1, and L1 visa programs to defraud United States knowingly and willfully and to manipulate the system to increase profits and the value of Tata stock. Mr. Palmer has also been privy to emails and other documentations that prove these violations, Comcast Corporation is located at Comcast Center 1701 JFK Boulevard Philadelphia, PA 19103 by conduct an audit of the Tata and their immigration practices.

2.      Defendant Tata Consultancy Services, Ltd. is an Indian multinational corporation that provides information technology and consulting services to customers located worldwide. Tata is headquartered in Mumbai, India and operates approximately 19 offices in the United States, including offices in Rockville, Maryland and Wilmington, Delaware.

## JURISDICTION AND VENUE

3.      Jurisdiction in this Court is proper pursuant to 31 U.S.C. § 3732(a) and 3730 (b). This Court also has jurisdiction pursuant to 28 U.S.C. § 1331.

4.      The Court may exercise personal jurisdiction over Defendants, and venue is proper in this Court, pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 because the acts proscribed by 31 U.S.C. § 3729 *et seq.,* and complained of herein, took place in part in this District and Defendants transacted business in this District, as described herein.

5.      Pursuant to 31 U.S.C. § 3730 (b) (2), Relator prepared and served the Original Complaint on the Attorney General of the United States, the United States Attorney for the Eastern District of Texas, as well as a statement of all material evidence and information currently in its possession and of which it is the original source, as discussed in more detail below. These disclosures statements are supported by material evidence known to the Relator known to the Relator at the time of the filing establishing the existence of Defendants' false claims.

6.      In accordance with the False Claims Act, and the respective False Claims Act cited herein, Relator will serve this First Amended Complaint on the Attorney General for the United States, the Attorney for the Eastern District of Texas.

## BACKGROUND

### The United States False Claim Act

7.      The FCA provides, in pertinent part:

(a) Liability for Certain Acts. —

(1) In general. — Subject to paragraph (2), any person who—

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

(D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;

(E) is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(F) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge property; or

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104–410), plus 3 times the amount of damages which the Government sustains because of the act of that person. (3) Costs of civil actions. — A person violating this subsection shall also be liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages.

8.      This action involves Tata's fraudulent misuse of the United States visa system to procure H-1B, L-1A, and B-1 visas for foreign workers' employment in the United States in violation of 31 U.S.C. § 3729, *et seq.* Defendant Tata Consulting Services commits visa fraud to maximize the number of work and business visas it can obtain from the U.S. government each year. Tata's actions deprive the government of its property interest in thousands of visas, significant revenue that would otherwise be derived from visa application fees, and significant tax revenue.

## SUBSTANTIVE ALLEGATIONS

9.      Defendant Tata Consulting Services submits H-1B Specialty visa applications which exceed their actual staffing requirement. These are sent to the United States Citizenship and Immigration Services ("USCIS"). Additionally, Defendant Tata Consulting Services falsely indicates in the visa petitions that a specific job at a specific location is available for the person for whom the company seeks the visa. However, these positions do not in fact exist, and Defendant Tata Consulting Service's certifications are false. They are applying for business that does not exist.  Because H-1B visas are only available for employees seeking to perform specialty occupations in the United States, Defendant Tata Consulting Services knowingly and willingly falsifies employee roles listed in the H-1B visa petitions and falsely certifies that these employees will be working in specialty occupations which qualify for an H-1B visa once in the United States. Tata then uses these H-1B visa employees to perform nonspecialized work in the U.S., in violation of the United States visa laws. This systematic fraud allows Tata to have an inventory of "visa ready workers" in India, available to travel to the U.S. at a moment's notice once/If the work becomes available.

10.      The above action enables Defendant Tata Consulting Services to calculatedly pay its H-1B visa workers less than the required "prevailing wage rate", in violation of 20 C.F.R. § 655.731(a). While there are strict regulations governing the pay of H-1B visa workers in the United States, Tata fails to pay its visa workers the required prevailing wage rate, and instead pays these workers substantially less than its non-visa-reliant employees. On many occasions they pay their employees in currency of their home nation as a stipend to avoid required wages.  As a result, the United States government is deprived of significant tax revenue.

11.    Defendant Tata Consulting Services commits similar acts of visa fraud to improperly secure blanket L-1A visas for its foreign employees. While L-1A visas are only available to bring management-level employees to the United States on intracompany transfers, Defendant Tata Consulting Services improperly secures L-1A visas for technical employees intended to work in non-managerial roles in the U.S. To avoid fraud detection by USCIS, Defendant Tata Consulting Services instructs its employees to make backend changes in Tata's online Ultimatix system and to manipulate the roles and reporting structure for L-1A visa holders performing technical work in the U.S. so that these workers appear to be performing management level, supervisory roles while on L-1A visas. These backend changes then allow L-1A visa holders to secure visa extensions so that they can remain in the U.S. for up to seven years. Because L-1A visa fees are lower than H-1B visa filing fees, Tata's practice of relying on L-1A visa holders in place of H-1B visa holders deprives the government of significant revenue.

12.    Defendant Tata Consulting Services on their practice for filing for L-1A Visas and the fraud alleged by Plaintiff: The Relator was illegally on a L1 visa for over 7 years However for 7 years I was on L1B and then L1A. An intracompany transfer (L1) is only allowed to work for Tata and not a customer such as Comcast. However, Tata Consulting Services was on the client site the entire time, was given a desk at the client location, his day-to-day operation was supervised by the client and Tata was getting paid an hourly billing rate of $125.00. The employee was acting as a "Project Manager" when the company role was that of a business consulting manager. There were people reporting to him/her in the United States and in India and the job was to lead a team of consultants to gather requirements. The employee has NO "Specialized Knowledge" nor did any of the L1 workers he/she was engaged with. Many of these workers were code developers and testers.

7

13.     Further, this action involves Tata's improper use of B-1 visa workers to perform skilled and unskilled labor in the United States. Employees on B-1 visas may only perform certain, temporary activities in the United States, and are prohibited from performing the same work as non-visa-reliant employees and H-1B visa workers. However, Tata secures B-1 visas for employees to perform skilled and unskilled labor in the U.S., thereby violating the visa laws.

14.     Because B-1 visa fees are lower than H-1B visa application fees, Tata's practice of improperly relying on B-1 visa holders in place of H-1B visa holders deprives the government of significant revenue.

15.     Mr. Palmer was hired by Comcast Corporation at Comcast Center 1701 JFK Boulevard Philadelphia, PA 19103 by Mr. David Brier, Vice President and Deputy General Counsel, Employment Litigation in 2016 to conduct an audit of the Tata and their immigration practices. As such Mr. Palmer, has been privy to, seen and learned of, intimate details of Tata schemes to use the H1B, B-1, and L1 visa programs to defraud United States knowingly and willfully and to manipulate the system to increase profits and the value of Tata stock. Mr. Palmer has also been privy to emails and other documentations that prove these violations.

16.     Defendant Tata Consultancy Services, Ltd. is an Indian multinational corporation that provides information technology and consulting services to customers located worldwide. Tata is headquartered in Mumbai, India and operates approximately 19 offices in the United States, including offices in Rockville, Maryland and Wilmington, Delaware.

8

17.     Before filing this complaint, Relator Palmer served a copy of the same upon the United States, together with a written disclosure statement setting forth and enclosing all material evidence and information he possesses, pursuant to the requirements of 31 U.S.C. § 3730 (b)(2). Additionally, Relator Palmer met with AUSA's, DHS, and State Department special agents showing all the evidence. This meeting took place in Dallas, Texas.

## FACTUAL ALLEGATIONS

### *Tata's Reliance on Visa Workers*

18.     Defendant Tata Consulting Services employs at least 29,900 workers in the United States, the vast majority (76% or more) of whom are visa workers. Tata made over $15 billion in revenue in the past fiscal year. The company derives over 50% of its revenue from North America, the vast majority of which is from the United States.

19.     Defendant Tata Consulting Services contracts with U.S. companies to provide IT-related services. Once Tata secures a contract with a client, it hires individuals to fill positions to service the client. Tata prefers to staff open U.S. positions with foreign workers for whom Tata secures visas.

20.     Defendant Tata Consulting Services secures three types of visas to bring foreign workers to the United States: H-1B, L-1A, and B-1 visas. First, Tata uses H-1B visa workers to staff most of the its open U.S. positions. H-1B visas are intended to bring specialized foreign workers to the United.

21.     States when there are insufficient workers in the U.S. to perform the jobs at issue. *See* 8 C.F.R. § 214.2(h)(1)(ii)(B); 8 C.F.R. § 214(i)(1). The open position must meet certain criteria

to qualify as a specialty occupation, and the prospective H-1B worker must have attained a bachelor's degree or higher in the specific specialty, or its equivalent, to be qualified to accept the position. *See* 8 U.S.C. § 1184(i)(1). Moreover, as part of each H-1B visa application, the petitioner must establish that a specific job at a specific location is available for the person for whom the company seeks the visa. *See* 20 C.F.R. § 655.730(c)(4) (discussing required content of Labor Condition Applications that accompany visa petitions).

22.    Once in the U.S., H-1B visa workers must be paid the greater of the actual wage rate for the position (*i.e.*, the actual wage paid by the employer to other employees with similar experience and qualifications for the job at issue) or the prevailing wage (*i.e.*, the prevailing wage paid by other employers in the same geographic area for the job at issue), as required by 20 C.F.R. § 655.731(a). Employers must attest, as part of the H-1B visa application, that it will pay this required wage to the H-1B visa worker for his or her entire period of employment in the United States.

23.    Because the United States government imposes a strict cap on the number of H-1B visas issued annually, corporations must compete through a lottery system for the 65,000 visas available each year (an additional 20,000 are reserved for individuals with advanced degrees). This process is extremely competitive. The filing period opens in early April, and if the H-1B cap is met within the first five business days of the filing period, USCIS will reject any H-1B visa petitions received after the cap is met. The cap is generally met within the first five business days (or very shortly thereafter).

24.    Relator Palmer further alleges that, in 2017, the filing period opened on April 3, and USCIS announced on April 7 (just four business days later) that it had received enough H1B visa petitions to reach the 65,000 cap. In total, 199,000 H-1B visa petitions were received by

USCIS during the 2017 filing period. H-1B visa holders may work in the United States for a maximum initial stay of three years, which may be extended once for an additional three years. H1B visa petitions are submitted under penalty of perjury.

25.     The total fee to secure an H-1B visa for a company like Defendant Tata Consulting Services is $6,460 (which includes: a base application fee of $460; an American Competitiveness and Workforce Improvement Act fee of $1,500 per petition for employers with over 26 employees; a $500 fraud prevention and detection fee; and an additional fee of $4,000 for employers with over 50 employees, 50% or more of whom have H-1B or L-1 visas). If the petition is not selected in the lottery, the application fee is refunded.

26.     Defendant Tata Consulting Services secures L-1A visas for its foreign employees. L-1A visas are intended to be used to bring management level employees to the United States as part of an intracompany transfer. Employees on L-1A visas must supervise and control the work of other personnel, including the hiring, firing, and/or promotion of subordinate employees, or "if no other employee is directly supervised, [he or she must] function at a senior level within the organization hierarchy or with respect to the function managed." *See* 8 C.F.R.§ 214.2(l)(1)(ii)(B). L-1A visa holders may work in the United Sates for a maximum initial stay of three years, which may be extended twice in increments of two years. L-1A petitions are submitted under penalty of perjury.  Tata willingly uses this visa to employ and charge customers for their work.

27.     The fee to secure an L-1A visa for a company like Tata is $5,460 (which includes: a $460 base application fee; a $500 fraud prevention and detection fee; and an additional fee of $4,500 for employers with over 50 employees, 50% or more of whom have H-1B or L-1 visas).

28.     Defendant Tata Consulting Services secures B-1 visas to bring foreign employees to the United States. B-1 visas permit foreign workers to enter the United States for an initial stay

of up to six months for business purposes such as consulting with business associates, traveling for business meetings and conventions, acting as a speaker or lecturer, negotiating contracts, participating in training, and other temporary activities. Individuals on B-1 visas are not permitted to engage in skilled or unskilled labor while in the U.S., nor are they permitted to work full-time jobs. *See* 9 FAM 41.31 N7-N9. Tata has issued fake "Welcome Letters" which deceive the consulate to approve the visas. The fee to secure a B-1 visa is $160.

29.     Relator is "original source" of the information in this matter as that term is defined by 31 U.S.C. §3730 (e) (4) and analogous state False Claims Acts. Relator has knowledge that is independent of and materially adds to any purported publicly disclosed allegations or transactions and voluntarily provided to the Government before filing this actions included a pre-filing disclosure statement, which contained the substantive allegations alleged herein, and numerous internal Tata Consulting Services documents included, but not limited to agreements, term sheets, emails to and from Relator, emails to and from witnesses and other illegal remuneration Tata Consulting services provided as discussed herein. Relator also provides the Government with a copy of all the documents in his possession.

*Tata's Misuse of H-1B Visa Fraud*

30.     Defendant Tata Consulting Services employs a centrally controlled process for the procurement of visas. Tata Consulting Services is comprised of multiple Industry Solutions Units ("ISUs"), each responsible for providing IT-related services to customers based on industry. Each ISU is led by an ISU Head. ISU Heads are generally Senior Vice Presidents or Executive Vice Presidents of the company who report directly to Tata Consulting Services executive leadership. The ISU Heads provide guidance and instructions regarding the procurement of visas to Client Partners, who manage the client accounts within the Unit. The Client Partners assists in the procurement of visas and pass along instructions from ISU Heads regarding visa issues to Tata's Project Management Office ("PMO") team. The PMO team prepares H-1B visa petitions in compliance with the ISU Heads' instructions. The petitions are then filed by Tata Consulting Services' Foreign Deputation and Facilitation Unit, which is led by Amit Jindal, Head of Immigration & Compliance for North America.

31.     At the direction of senior management (including ISU Heads), Tata engages in visa fraud to procure the maximum number of H-1B visas possible each year. Tata Consulting Services commits H-1B visa fraud in at least two ways. First, in violation of visa law and regulations, Tata submits large numbers of visa petitions that falsely indicate that specific positions exist, even though the positions do not exist. Tata Consulting Services does so to maximize its chances of securing the highest number of H1B visas from the visa lottery system. Defendant Tata Consulting Services is consistently one of the top H-1B visa applicants in the country. In 2015, Tata received 7,936 new visas, while in 2016, it received 11,295 new visas, meaning it likely submitted around three times the 7,936 and 11,295 H-1B petitions in each of these years (given that only about one in three submitted petitions are randomly selected through the lottery system, *see* https://www.uscis.gov/news/alerts/uscis-completes-h-1b-caprandom-selection-process-fy-2016). Considering that Tata employs only about 29,900 individuals in the U.S., it is not possible that 25,000 to 30,000 new positions existed in each of these years. All, or almost all, of the individuals for whom Tata sponsors visas are from India.

32.     This practice allows Tata to create an inventory of visa-ready workers in India available to fill U.S. positions. These visa workers can relocate to the United States at a moment's notice once work becomes available within the company. Individuals in India with unutilized visas are mapped to open positions in the U.S. and are given priority when work becomes available. Thus, Tata uses this inventory to promptly fill open positions in the U.S. with visa-ready foreign employees, as opposed to qualified workers residing in the U.S. who do not require a visa.

33.     Defendant Tata Consulting Services engages in threats and manipulation of its employees to give "kickbacks" and to keep" quiet" about wrong doings and crimes. This goes to middle managers. Retaliation for not complying is loss of job, alienation, and violence. This is violation of the Trafficking Victims Protection Act Forced Labor section (18 U.S.C. § 1581).

34.     Because Defendant Tata Consulting Services Files H-1B visa petitions more than its actual staffing needs and for positions that do not in fact exist, employees are often placed in locations and client accounts which differ from those listed in their visa petition.

35.     Second, at the direction of Tata ISU Heads, including Ramana Murthy, Senior Vice President of Banking and Financial Services - North America, Tata falsifies employee roles listed in H-1B visa petitions to maximize the number of visa approvals it can secure each year. H-1B visa petitions are only available for employees seeking to perform specialty occupations in the United States, positions that require highly specialized knowledge. *See* INA § 214(i)(1); 8 C.F.R. § 214.2(h)(4)(iii)(A). However, Tata utilizes H-1B visa employees to perform low-level, non-specialized work in the U.S. To secure H-1B visas for these workers, Tata's Project Management Office team falsifies employee roles listed in the H-1B visa petitions and certifies (falsely) that these employees will be working in specialty occupations which qualify for an H-1B visa once in the United States. For example, certain job roles, such as manual testers and support analysts, do not qualify as specialty occupations, as they do not require highly specialized knowledge. To fill these positions with H-1B workers, Defendant Tata Consulting Services falsely lists jobs that require specialized skill on the workers' visa petitions, such as that of a web developer, to secure the visa approval. These false H-1B petitions are then approved and processed by Defendant Tata Consulting Services' Foreign Deputation and Facilitation Unit.

36.     Relator   Jack "Jay" Palmer, while interviewing Tata Consulting Services Employees at Comcast, that over 60% of the workers were on the wrong visa, the wrong job role, or being victims of less pay and abuse.   An example is one employee was an H1B worker and his pay was $27,000 less than the required prevailing wage. When Mr. Palmer asked why, he stated, "it's still more than I would make in India" and "It's an opportunity and that is why we do not complain about the pay"

37.     While H-1B visa workers must be paid the greater of the actual wage rate for the position listed on the visa petition, or the prevailing wage, Tata's H-1B visa workers are paid substantially less – *e.g.*, 30% less – than non-visa-reliant workers.

38.     As a result of Defendant Tata Consulting Services' illegal H-1B visa practices, the government has been wrongfully deprived of its property interest in the visas, as well as the significant tax revenue that would have been generated from the employment of non-visa reliant workers.

***Tata's Misuse of L-1A Visa Fraud***

39.     To circumvent H-1B visa regulations and strict lottery yearly cap, Tata improperly secures L-1A visas for technical employees working in non-managerial roles in the U.S. To obtain L-1A visas for these employees, Tata falsifies these individuals' job titles and work responsibilities on their L-1A visa petitions and holds these individuals out as managers who will exercise discretion and control over Tata employees in the U.S. This false information allows Tata to maximize the number of L-1A visas it can secure from the federal government each year. Between 2002 and 2011, Tata sponsored 25,908 L-1 visas, the most of any company in the United States. Tata received 1,606 L-1 visa approvals in 2015, and 1,615 L-1 visa approvals in 2016.

40.    After Defendant Tata Consulting Services secures an L-1A visa for these workers, these employees are assigned to the United States to fill open positions servicing Tata clients. However, these employees are often placed in technical, non-managerial positions which differ from the roles listed in their visa petitions. Such technical, non-managerial work cannot be performed by L-1A visa workers in the United States and should rightfully be performed by U.S. citizens or legitimate H-1B visa holders.

41.    USCIS routinely conducts site visits to employers such as Tata to detect instances of visa fraud and to verify information listed in certain visa petitions. USCIS sends Fraud Detection and National Security officers to make unannounced visits to Tata worksites. During these visits, the officers conduct compliance reviews to ensure that employees' job titles and job responsibilities match those listed in their visa petitions. To avoid fraud detection, Tata Consulting Services' corporate Human Resources Team instructs all accounts to make backend changes in Tata's online Ultimatix system to conform L-1A visa holders' employee information to their visa petitions. Single Points of Contact in each account and the Human Resources Department manipulate the roles and reporting structure for L-1A visa holders performing technical work in the U.S. so that these workers appear to be performing management-level, supervisory roles while on L-1A visas. Tata also instructs its L-1A visa employees to lie about their job titles and job responsibilities to the Fraud Detection and National Security officers so that it may continue to perpetrate this fraud.

42.    These backend changes also allow L-1A visa holders to secure visa extensions, and as a result, these workers can remain in the United States for up to seven years. Tata's Foreign Deputation and Facilitation Unit is responsible for filing the visa amendments using this falsified information.

43.    As a result of Defendant Tata Consulting Services' illegal L-1A visa practices, the government has been wrongfully deprived of its property interest in the visas. Additionally, because L-1A visa fees are lower than H-1B visa fees ($5,460 versus $6,460), Tata's practice of relying on L-1A visa holders in place of H-1B visa holders deprives the government of revenue it would otherwise collect.

***Tata's B-1 Visa Fraud***

44.    To circumvent the more burdensome H-1B visa regulations, governmental oversight, and strict yearly cap, Tata improperly secures B-1 visas to bring foreign employees to the United States to perform skilled and unskilled labor, which is prohibited by the U.S. visa law and regulations. *See* 9 FAM 41.31 N7-N9. Specifically, Tata transfers members of its foreign workforce to the U.S. on B-1 visas to perform labor that would otherwise be performed by U.S. citizens or H-1B visa holders. By circumventing the limitations set forth by U.S. visa laws, Tata is committing visa fraud.  Mr. Palmer has a list of all L1 employees and their illegal roles in their own handwriting and signature.

45.    During Mr. Palmers time auditing Defendant Tata Consulting Services at Comcast, he observed the names of hundreds of B1 workers that have and had traveled U.S. to perform skilled and unskilled labor. These B-1 visa holders would regularly perform work in the U.S. for up to six weeks. The practice of utilizing B-1 workers to perform skilled and unskilled labor is common across client accounts in the United States. Mr. Palmer has the list.

46.     Because B-1 visa fees are less costly than H-1B visa fees ($160 versus $6,460), Tata's practice of improperly relying on B-1 visa holders in place of H-1B visa holders deprives the government of revenue it would otherwise collect. Likewise, because neither the employer nor the B-1 visa holder pay taxes for his or her work (such as income taxes and payroll taxes), Tata's practice of improperly relying on B-1 visa holder to perform work in the United States deprives the government of tax revenue it would otherwise collect (from work performed by U.S. citizens, permanent residents, or H-1B visa workers).

## CAUSES OF ACTION

### COUNT I

### (Violations of the False Claims Act)

### (31 U.S.C. § 3729)

47.     Relator re-alleges and incorporates Paragraphs 1 through 58 by reference as if fully set forth herein.

48.     Tata has knowingly presented, or caused to be presented, to employees of the United States, false and fraudulent claims for property or approval, in violation of 31 U.S.C. § 3729(a)(1)(A). Tata has knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, in violation of 31 U.S.C. § 3729(a)(1)(B). Tata has knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the government, and has knowingly concealed and improperly avoided or decreased an obligation to pay or transmit money or property to the government, in violation of 31 U.S.C. § 3729(a)(1)(G). Tata's practices, discussed above, have deprived the government of its property interest in thousands of visas, substantial visa fees, and substantial tax revenue. For example, Tata submits H-1B visa petitions more than its actual

staffing needs and falsifies employee roles listed in the H-1B visa petitions in order to maximize the number of H-1B visas it can secure from the government each year. Tata then pays these H1B visa workers substantially less than its non-visa-reliant employees, resulting in significant tax revenue losses. Tata also circumvents the United States visa laws by fraudulently obtaining L-1A visas for employees performing non-managerial, technical work in the U.S. Tata also improperly utilizes B-1 visa workers to perform skilled and unskilled labor that should rightfully be performed by non-visa-dependent employees or legitimate H-1B visa holders. Further, because both L-1A and B-1 visa fees are lower than H-1B visa fees, Tata's practice of improperly relying on L-1A and B-1 visa holders in place of H-1B visa holders deprives the government of revenue it would otherwise collect.

       49.      For each False Claims Act violation, Tata is subject to penalties of up to $10,000 for each improper act and three times the number of damages sustained by the government.

**WHEREFORE**, Relator prays that the Court enter judgment against Defendant Tata Consulting Services, and in favor of the United States and Relator as follows:

a. A declaratory judgment that the practices complained of herein are unlawful and violate. 31 U.S.C. § 3729.

b. Imposition of the maximum number of civil penalties permitted for each of Tata Consultancy Service's False Claims Act violations.

c. Civil penalties in the amount of three times the actual damages suffered by the federal government as a result of Tata's actions.

d. A permanent injunction against Tata and their officers, agents, successors, employees,

representatives, and any and all persons acting in concert with them, from engaging in unlawful policies, practices, customs, and usages set forth herein.

e.  Relator seeks a fair and reasonable amount of any award for his contribution to the Government's investigation and recovery pursuant to 31 U.S.C. §§ 3730(b) and (d) of the False Claims Act, plus interest.

f.  Relator also seeks an award of back pay, interest on the back pay, compensatory damages, punitive damages, costs, and attorneys' fees pursuant to 31 U.S.C. § 3730(h) of the False Claims Act.

g.  Award all reasonable attorneys' fees, expert witness fees, expenses, and costs of this action.

h.  Pre- and post-judgment interest; and

i.  Such other relief on behalf of the Relator and/or the United States of America as this Court deems just and appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator prays that the Court enter judgment against Defendant Tata Consulting Services, and in favor of the United States and Relator as follows:

j. A declaratory judgment that the practices complained of herein are unlawful and violate. 31 U.S.C. § 3729.

k. Imposition of the maximum number of civil penalties permitted for each of Tata Consultancy Service's False Claims Act violations.

l. Civil penalties in the amount of three times the actual damages suffered by the federal government as a result of Tata's actions.

m. A permanent injunction against Tata and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in unlawful policies, practices, customs, and usages set forth herein.

n. Relator seeks a fair and reasonable amount of any award for his contribution to the Government's investigation and recovery pursuant to 31 U.S.C. §§ 3730(b) and (d) of the False Claims Act, plus interest.

o. Relator also seeks an award of back pay, interest on the back pay, compensatory damages, punitive damages, costs, and attorneys' fees pursuant to 31 U.S.C. § 3730(h) of the False Claims Act.

p. Award all reasonable attorneys' fees, expert witness fees, expenses, and costs of this action.

q.   Pre- and post-judgment interest; and

r.   Such other relief on behalf of the Relator and/or the United States of America as this Court

deems just and appropriate.

## JURY TRIAL DEMANDED

Relator demands a jury trial.

Respectfully submitted,

**VAN DER VEEN, HARTSHORN, & LEVIN**

/s/ _____

     Michael T. van der Veen (Pa. Bar No. 75616)
     *Admitted Pro Hac Vice*
     1219 Spruce Street
     Philadelphia, PA 19107
     Telephone (215) 546-1000
     Facsimile (215) 546-8529
     Email mtv@mtvlaw.com
     Attorney for Relator

Dated: 3/3/23

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2023, a true copy of the foregoing document was sent to the following counsel of record by electronic service:

James Garland Gillingham, Esq.
United States Attorney's Office-Tyler
110 North College, Suite 700
Tyler, TX 75702

Joshua M Russ, Esq.
Reese Marketos, LLP
750 N. Saint Paul Street, Suite 600
Dallas, TX 75201

Howard Shapiro, Esq.
Wilmer Cutler Pickering Hale & Dorr, LLP
2100 Pennsylvania Ave, NW
Washington, DC 20037

Jessica Lutkenhaus, Esq.
Wilmer Cutler Pickering Hale & Dorr, LLP
2100 Pennsylvania Ave, NW
Washington, DC 20037

Lauren Moore, Esq.
Wilmer Cutler Pickering Hale & Dorr, LLP
2100 Pennsylvania Ave, NW
Washington, DC 20037

**VAN DER VEEN, HARTSHORN, & LEVIN**

/s/            *Michael T. van der Veen*
           Michael T. van der Veen (Pa. Bar No. 75616)
           *Admitted Pro Hac Vice*
           1219 Spruce Street
           Philadelphia, PA 19107
           Telephone (215) 546-1000
           Facsimile (215) 546-8529
           Email mtv@mtvlaw.com
           Attorney for Relator